IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROELLE, | ) | CASE NO. 1:06 CV 2393 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JULIUS WILSON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

Before the Magistrate Judge on referral[1] is William Roelle's habeas corpus petition

under 28 U.S.C. § 2254.[2]  Roelle is now serving a sentence in the Richland Correctional

Center for kidnapping with a sexual motivation specification.[3]

Roelle's petition asserts two grounds for relief:

- Denial of the right to confrontation in violation of the Sixth and
Fourteenth Amendments, by the introduction of hearsay statements of
declarants who did not testify at trial; and

- Denial of due process, in violation of the Fourteenth Amendment, by
conviction for kidnapping based on insufficient evidence.[4]

The State counters the petition by asserting that Roelle failed to properly present his

sufficiency of the evidence ground as a federal constitutional claim in the state courts and,

---

[1] ECF # 3.

[2] ECF # 1.

[3] *Id.* at 1.

[4] ECF # 1.

therefore, procedurally defaulted that ground.[5]  Furthermore, the State argues that on both

grounds the state appellate court's decision represents a reasonable application of clearly

established federal law.[6]

Roelle has not filed a traverse, despite having requested and received additional time

to do so.[7]

The Magistrate Judge concludes that Roelle properly presented a federal constitutional

sufficiency of the evidence claim in the state courts.  He did not, therefore, procedurally

default on that ground.  Nevertheless, with respect to both grounds asserted, the state

appellate court reasonably applied clearly established federal law.  The petition should be

denied.

## II.  Facts

**A.     The underlying facts, course of proceedings at trial, and sentencing**

The state appellate court made the following findings as to the underlying facts:[8]

> Appellant's convictions stem from an indictment that occurred on the
> night of November 29, 2002.  Two Cleveland police officers, Patricia Katynski
> and Timothy Burkhardt, received a radio dispatch to respond to 2160 W. 45th

---

[5] ECF # 7 at 12.

[6] *Id.* at 20, 24.

[7] ECF # 12.

[8] *State v. Roelle*, No. 83687, 2004 WL 1848181, at \*\*1-2 (Ohio Ct. App. Aug. 19, 2004).  For the convenience of the District Judge, a copy of the Westlaw report of this decision is attached.  Findings of fact by the state appeals court on its review of the trial record are presumptively correct in a federal habeas proceeding. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

Street on a domestic violence complaint.  They were informed the situation involved a woman assaulting a man.  When they arrived, they saw the woman, later identified as Cheryl Smith, standing outdoors.  Although she seemed intoxicated, she escorted them around the rear of the house to meet with her boyfriend, the complainant.

The complainant identified himself as appellant William Roelle.  He stated Smith had assaulted him, so Katynski accompanied Smith to another room to hear her side of the story.  Smith remained "upset and crying;" she indicated she had confronted appellant with an allegation concerning their seven-year old daughter, N, who also was in the house.

Katynski returned to appellant to ask what he wanted them to do about his complaint.  Appellant said "he just wanted her to leave."  However, as Katynski led Smith out, Smith demanded something be done about the allegation.  Smith's insistence persuaded Katynski to further investigate the underlying situation.

Katynski decided to leave Smith in the kitchen and to have Burkhardt take appellant to the patrol car while she interviewed N in another room.  At about this time, vice detective John Graves arrived at the scene; he had heard the radio dispatch and decided to assist the patrol officers.

After assuring themselves of N's competence, Katynski and Graves began asking her what had occurred.  As N described the incidents, Smith reacted by attempting to "go after" appellant; Katynski had to threaten to restrain her in order to prevent another episode of domestic violence.

N directed the officers to the living room as the place where the incidents with appellant occurred.  She pointed out a bottle of lotion and indicated the television with its nearby box of videotapes as significant items in her story.  She pointed out one videotape in particular; mixed in with the children's videotapes was one distributed by "Penthouse" which displayed on its carton scantily-clad women.

After speaking with N, Katynski radioed for additional police personnel, and soon she was joined by a photographer from the police department's Scientific Investigation Unit ("SIU").  A social worker from Cuyahoga County Children and Family Services ("CFS"), Velma Horton also arrived.  The police officers located N's ten-year old brother in the house next door, questioned him, then, with Horton's approval, permitted Smith and her

children to go to Smith's mother's house.  Appellant was placed under arrest on charges of rape.

The appellate court then provided the following summary of the course of proceedings

at trial and sentencing:[9]

> Appellant ultimately was indicted in this case on eleven counts. Counts one through five charged him with rape of a minor, in violation of R.C. 2907.02.  Each of these counts contained both a furthermore clause indicating the victim had been less than ten years old and a sexually violent predator specification.  Counts six through ten charged appellant with kidnapping, in violation of R.C. 2905.01, all with sexual motivation specifications.  Count eleven charged appellant with disseminating obscene matter to juveniles, in violation of R.C. 2907.31.

> Appellant's case proceeded to a jury trial.  The state presented the testimony of several witnesses, including Katynski, Graves, N's sixteen-year old stepsister, N's examining physician, N's maternal grandmother, the CFS social worker assigned to the family, and N herself.  Additionally, the state admitted into evidence, inter alia, the Penthouse videotape N had pointed out to Katynski and Graves.

> The jury ultimately found appellant guilty of only two of the charges alleged in the indictment, viz., count six, kidnapping with a sexual motivation specification, and count eleven, disseminating obscene matter to juveniles. Following these convictions, the trial court referred appellant for a psychiatric evaluation and a presentence report.

> Ultimately, the trial court sentenced appellant to concurrent terms of five years and two years for his convictions.  It also determined appellant to be a sexual predator.

## B.    Direct appeal

Subsequent to the trial and initial sentencing, Roelle, through counsel, filed a

timely appeal asserting two assignments of error relevant to this petition:

---

[9] *Roelle*, 2004 WL 1848181, at *2.

- The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Roelle was guilty of kidnapping as alleged in count six.

- The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and evidence rules 801 and 802 when it permitted various State witnesses to testify about what they learned in conversations with the alleged victim and her family members, including family members who did not testify at trial.

Upon review, the state appellate court reversed Roelle's conviction for disseminating matter harmful to minors and affirmed his conviction for kidnapping with a sexual motivation specification and his sexual predator classification.[10]

Roelle, through counsel, timely appealed to the Supreme Court of Ohio and raised two propositions of law relevant to this petition:

- It is a violation of the Sixth Amendment right to confront witnesses as well as a violation of Ohio hearsay law, for a witness to testify about what he learned in conversations with a non-witness, regardless of whether the testifying witness actually relates the non-witness' statements.

- In order to convict a defendant of kidnapping a child for the purpose of engaging sexual activity, the State is required to provide affirmative proof that the child did not consent to being transported from one location to another.

The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[11]

---

[10] *Id.*, at *6.

[11] ECF # 13 at 000192.

Roelle filed a petition for certiorari in the Supreme Court of the United States, which

was denied.[12]

## C.    Federal habeas petition

Roelle timely filed the present petition for federal habeas relief, asserting the

following two grounds for relief:

> GROUND ONE:  Mr. Roelle was denied his right to confrontation under the
> 6th and 14th Amendments of the Constitution where the prosecution
> introduced hearsay at a trial where the declarant did not testify.
>
> Supporting Facts:  The trial court permitted police officers to testify about
> what they learned from the alleged victim and her family members during the
> police investigation.  Cleveland police officer Katynski was permitted to
> testify that Cheryl Smith, who did not testify, was upset that the police were
> not doing more about her allegations, that the subject matter of the officer's
> discussions with the alleged victim were a sexual assault, that DCGS was
> called as a result, that the alleged victim discussed a bottle of lotion and a
> video that were pertinent to the case.  The end result was to leave the jury with
> the clear impression that Mr. Roelle sexually assaulted the alleged victim and
> used the hand lotion and the video to facilitate his crimes–all apart from any
> testimony she provided at trial.  Because so much hearsay was employed by
> the prosecution at trial, the State managed to turn a one witness case, one
> where the witness had previously recanted, into a case that improperly
> appeared to be predicated on more evidence than in fact existed.
>
> GROUND TWO:  Petitioner was denied due process of law where the
> evidence did not support his conviction for kidnapping.
>
> Supporting Facts:  In order to be convicted of kidnapping, Mr. Roelle was
> required to have transported the alleged victim for the purpose of engaging in
> sexual activity "against the victim's will."  Thus, it is expressly required that
> the State proved Mr. Roelle intended to pursue non-consensual sexual activity.
> There was no evidence presented at trial to demonstrate that non-consensual
> activity occurred.  Unlike Ohio's rape statute, which does not relieve the State
> of proving that the sexual activity, itself, is against the will of the young

---

[12] *Id*. at 000193.

victim. Moreover, the evidence that Mr. Roelle had any improper contact with the alleged victim was outweighed by the evidence that the did not do so. The alleged victim, her mother, and step-sister, all recanted any charges at various times. The alleged victim's testimony offered no details about the alleged rape; she testified that she would go to sleep immediately thereafter; and her behavior at school, where she did well, was inconsistent having suffered sexual abuse.[13]

## III.  Analysis

### A.    Ground two was not procedurally defaulted

The State asserts that Roelle procedurally defaulted on ground two – that there was insufficient evidence to support his conviction for kidnapping – because he did not fairly present that ground to the Ohio courts as a federal constitutional claim.[14]

Fair presentment is a condition for exhausting state remedies.[15] Federal habeas courts will not address unexhausted claims. Such claims are procedurally defaulted if further review by the state court is not possible.[16]

The Sixth Circuit has identified four ways a habeas petitioner may "fairly present" his federal claim to a state court:

(1) reliance on federal cases employing constitutional analysis; (2) reliance on state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a

---

[13] ECF # 1.

[14] ECF # 7 at 12.

[15] *O'Sullivan v. Boerkel*, 526 U.S. 838, 842 (1999); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[16] *Smith v. Ohio Dep't of Rehab. and Corrs*., 463 F.3d 426, 431 (6th Cir. 2006).

denial of a specific constitutional right; (4) alleging facts well within the mainstream of constitutional law.[17]

Here, the state argues that Roelle "failed to alert the state courts to the federal nature of his claim" of insufficiency of the evidence, and so "fail[ed] to fairly present [that] claim to the state courts...."[18]  However, an examination of the record reveals otherwise.

Roelle's brief to the state appeals court specifically told that court that his insufficiency of the evidence claim was based on an alleged violation of the Fifth Amendment to the United States Constitution, citing to and quoting from the United States Supreme Court decision in *Jackson v. Virginia*.[19]  Roelle made precisely this same argument, again citing to and quoting from the decision in *Jackson*, in his brief to the Ohio Supreme Court.[20]

Accordingly, the State's contention that Roelle procedurally defaulted on his insufficiency of the evidence argument by failing to fairly present it to Ohio courts as a federal constitutional claim has no merit.  Roelle fairly presented this claim to Ohio courts by both "relying on federal cases employing constitutional analysis" and "phrasing the claim in terms of constitutional law."[21]

---

[17] *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

[18] ECF # 7 at 12.

[19] *Id.*, Ex. I at 5, citing *Jackson v. Virginia*, 443 U.S. 307 (1979).

[20] *Id.*, Ex. N at 12-13.

[21] *Whiting,* 395 F.3d at 613.

**B.      Roelle's claims in grounds one and two have no merit as the state appeals court's decision denying these claims was not an unreasonable application of clearly established federal law.**

*1.      Standard of review*

With respect to any federal habeas claim adjudicated on the merits by state courts, 28 U.S.C. § 2254(d)(1) provides that the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States."

Under the "contrary to" clause, a federal court may grant habeas relief only if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts.[22] The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."[23] If, despite having the matter presented as a federal constitutional claim, the state court did not employ federal constitutional analysis to decide the issue, the federal habeas court must use the "contrary to" standard to examine the state decision for habeas purposes.[24]

Under the "unreasonable application" provision, a federal habeas court may grant the writ only if the state court correctly identified the controlling legal principle from a decision of the Supreme Court of the United States but then unreasonably applied that principle to its

---

[22] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[23] *Id.* at 405.

[24] *Alley v. Bell*, 307 F.3d 380, 397-98 (6th Cir. 2002).

resolution of the claim at issue.[25]  The proper standard for determining whether a state

court decision unreasonably applied clearly established federal law is whether that state

adjudication was "objectively unreasonable" and not merely erroneous or incorrect.[26]

Under 28 U.S.C. § 2254(e)(1), findings of fact made by the state courts are presumed

correct, rebuttable only by clear and convincing evidence to the contrary.[27] This presumption

of correctness also applies to factual findings made by a state appellate court in its review of

the state trial record.[28]

**2.      *The state appeals court decision – that the testimony of a Cleveland police officer concerning her contact with Roelle's girlfriend and his daughter was not impermissible testimonial hearsay – was not an unreasonable application of nor contrary to clearly established federal law.***

In his first ground for habeas relief, Roelle claims that he was denied his Sixth

Amendment right to confront witnesses against him when the trial court permitted a

Cleveland police officer to testify that the officer received a complaint from Roelle's

girlfriend, who did not testify at trial, that police were not doing more to investigate the

girlfriend's allegations concerning Roelle and their daughter.[29] Roelle also contends that this

same officer was further improperly permitted to testify that Roelle's daughter, who did

[25] *Williams*, 529 U.S. at 407-08.

[26] *Id.* at 409-11.

[27] *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

[28] *Brumley*, 269 F.3d at 637.

[29] ECF # 1 at 6.

testify at trial, discussed a sexual assault with the officer and told the officer about certain

pieces of physical evidence.[30]

In its decision, the state appeals court first recounted that Roelle asserted the claim

that this testimony was improper as a matter of both state evidentiary law and federal

constitutional law.[31]  Next, the Ohio court formulated the controlling rule, citing for its source

both Ohio and the United States Supreme Court decisions, that a police officer's testimony

"concerning the reasons for his or her actions during an investigation generally is not

considered hearsay, because, rather than [being offered] to prove the truth of the statement

made to the officer, it is offered to show why the officer as the testifying witness acted in a

particular manner."[32]

Applying that standard, the state court found the testimony here to be properly

admitted:

> In this case, both [officers] Katynski and Graves were careful to limit their
> testimony.  They described only what actions they took in response to the
> information they were given by each person to whom they spoke, rather than
> any specifics about what they were told.  On rare occasions when either one
> of them strayed from this limit, the trial court sustained defense counsel's
> objection to the improper testimony.[33]

The state appeals court here was construing the Ohio Rules of Evidence, as well as

the federal Constitution, in deciding whether the trial court erred in admitting of the out-of-

---

[30] *Id.*

[31] *Roelle*, 2004 WL 1488181, at *4.

[32] *Id.*

[33] *Id.*

court statements made to the officer during an investigation.  As such, a federal habeas court must take care to examine the record in light of both sources for the state court decision before determining if that conclusion was contrary to or an unreasonable application of federal law.[34] Specifically, while a state adjudication based on identifiable federal law is reviewed for whether it was an unreasonable application of the law, if the claim was resolved in state court as a matter of state law, that conclusion must be evaluated in the federal habeas proceeding in light of whether it was contrary to established Supreme Court law.[35]

The Supreme Court has held that the Confrontation Clause is "solely concerned with testimonial hearsay."[36]  Thus, before engaging in the two-step analysis prescribed by *Crawford v. Washington* of whether (1) otherwise impermissible hearsay is admissible under an exception to the hearsay rule and (2) whether that admissible hearsay is testimonial or not,[37] the crucial preliminary question of whether the statement involved is hearsay at all must be addressed.

Here, federal law as to the non-hearsay nature of out-of-court statements of background information made to an investigating officer is consistent with Ohio law.  As the Sixth Circuit recently stated in *United States v. Caver*:[38]

---

[34] *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005).

[35] *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002).

[36] *Davis v. Washington*, __ U.S. __, 126 S. Ct. 2266, 2274 (2006).

[37] *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

[38] *United States v. Caver*, 470 F.3d 220 (6th Cir. 2006).

Background information that explains how law enforcement came to be involved with a particular defendant *is not hearsay*, because it is not being offered for the truth of the matter asserted.  Instead, background information may be admitted to show the effect of hearing that information upon the testifying witness, who subsequently, as a result of the background information, acquires the knowledge that provides the foundation for the witness's testimony.[39]

In his petition, Roelle specifically contends that:

Cleveland police officer [Patty] Katynski was permitted to testify that [Roelle's girlfriend] Cheryl Smith, who did not testify, was upset that the police were not doing more about her allegations, ...[40]

Setting aside for the moment that Roelle also takes issue in this first ground for relief with Katynski's testimony concerning the subject matter of her initial discussion with the victim,[41] who did testify at trial,[42] the Magistrate Judge notes that Katynski's trial testimony to which Roelle objects was very limited.

After relating that she and her partner had spoken with Roelle and Smith about Roelle's complaint that he had been assaulted, Katynski testified that, because Roelle "didn't want anything done to his girlfriend for the assault," Cheryl Smith agreed to spend the night with her mother "just so things could calm down and they could talk in the morning."[43]

---

[39] *Id.* at 239 (emphasis added) (internal citations omitted).

[40] ECF # 1 at 6.

[41] *Id.*

[42] *See*, ECF # 10 (trial transcript, vol. III, testimony of Nicole Roelle) at 371-409.

[43] ECF # 9 (trial transcript, vol. II) at 176.

But, as the police were escorting Smith out of the home she shared with Roelle, Katynski testified that "we stopped because she [Smith] made a statement to us."[44] Katynski testified that Smith was "very, very angry" with Officer Katynski when she made the statement.[45] The prosecutor here then asked Katynski, "Why was she angry at you, without telling me what she said."[46] Katynski responded, "She thought I wasn't doing something based on the statement she made to me regarding her daughter."[47] This then prompted Katynski to "have my partner take Mr. Roelle out to the zone car to detain him so that we could investigate further these allegations she had made."[48]

In sum, this testimony simply provided the factual basis for how, in the eyes of the police, Roelle went from being the complaining witness in a domestic violence case to being a potential suspect in an entirely different matter. Thus, this testimony is precisely the kind of non-specific "[b]ackground information that explains how law enforcement came to be involved with a particular defendant" and so is not hearsay.[49]

Since it is not hearsay, no further *Crawford* analysis is required. Therefore, under either the "unreasonable application of" or "contrary to" tests, the Magistrate Judge

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Caver*, 470 F.3d at 239.

-14-

recommends finding that Roelle's challenge to the decision by the state appeals court here

to affirm the admission of the testimony of Officer Katynski at trial concerning Cheryl Smith

provides no basis for granting the writ.

Moreover, insofar as Roelle complains of the admission of those portions of

Katynski's testimony alluding to her interview with the victim or that the Department of

Children and Family Services (DCFS) was contacted,[50] the Magistrate Judge notes that both

the victim[51] and a social worker from DCFS[52] testified at trial.  As such, in addition to the fact

that Officer's Katynski's testimony referencing these persons was of a similar, non-hearsay

nature to the previously-reviewed testimony in that it merely provided background for her

investigation by "constructing the sequence of events,"[53] any possible hearsay in these cases

would have been cured by their subsequent appearance as witnesses at trial.[54]

Therefore, the Magistrate Judge recommends finding that Roelle's first asserted

ground for habeas relief here is without merit.

---

[50] *See*, ECF # 1 at 6.

[51] ECF #10 (trial transcript, vol. III) at 370-409.

[52] ECF # 9 (trial transcript, vol. II) at 261-91.

[53] *United States v. Evans,* 883 F.2d 496, 501 (6th Cir. 1989).

[54] *See*, *Moore v. KUKA Welding Syss. & Robot Corp.*, 171 F.3d 1073, 1081-82 (6th Cir. 1999) ("The hearsay dangers underlying out-of-court statements offered for their truth-sincerity, memory and not under oath, are not present when the declarant takes the stand as a witness."); *see also*, *United States v. Canon*, 141 F. App'x 398, 403 (6th Cir. 2005) (Where prior testimony of an investigator as to details of a medical doctor's insurance fraud was alleged to be hearsay, subsequent testimony of the doctor's own billing consultant as to those same details "was sufficient to cure any error in the [original] admission of the out-of-court statements.").

***3.       The state court decision denying relief on ground two here  –  Roelle's claim that his conviction for kidnapping was not supported by sufficient evidence – was not an unreasonable application of clearly established federal law.***

Roelle contends in ground two of this petition that there was no proof that any sexual activity with the victim was non-consensual.[55]  Moreover, he asserts that any evidence that he had "improper sexual contact with the victim is outweighed by the evidence that he did not do so."[56]

In response, the state argues that under the test articulated in *Jackson v. Virginia*[57] the state appeals court reasonably concluded that there was sufficient evidence for a rational trier of fact to have found that Roelle removed the victim from her bedroom for the purpose of having sexual contact with her against her will.[58]

Roelle's assertion that the evidence supporting the finding that he had sexual contact with the victim was outweighed by the evidence that he did not is itself not cognizable in federal habeas proceedings.  As noted, factual findings by the state trial court are, by statute, presumptively correct.[59]  This statutory presumption of correctness exists because the state trial jury, not a federal habeas court, is best able to  judge questions of credibility.[60]  Thus,

---

[55] ECF # 1 at 8.

[56] *Id.*

[57] *Jackson*, 443 U.S. 307.

[58] ECF # 7 at 21.

[59] *See*, 28 U.S.C. § 2254(d)(2).

[60] *Wainwright v. Goode*, 464 U.S. 78, 85 (1983).

a federal habeas court, unlike a state appeals court, simply has no authority to resolve conflicts in testimony or weigh the evidence.[61]

Roelle further contends that there was insufficient evidence to show that any sexual contact between himself and the victim was against the victim's will. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt,"[62] Roelle's claim is proper in a federal habeas action.

The Supreme Court has held that sufficient evidence exists in support of a conviction if, after viewing the evidence and inferences to be drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[63] As noted earlier, this standard of review does not permit the federal habeas court to make its own independent determination of guilt or innocence, but gives full play to the state trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences.[64]

Here, the specific kidnapping statute under which Roelle was convicted states, in matters involving a person under the age of 13, that "[n]o person ... by any means, shall remove another from the place where the other person is found or restrain the liberty of the

---

[61] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

[62] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[63] *Jackson*, 443 U.S. at 324.

[64] *Herrera*, 506 U.S. at 401-02; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

other person, ... to engage in sexual activity ... with the victim against the victim's will."[65]

Roelle argues that unlike the statute against rape which does not require proof that a minor

victim failed to consent to any sexual conduct,[66] this statute does require proof that any

sexual activity attendant to the kidnapping be shown to have been "against the victim's will"

regardless of the age of the victim.[67]  He asserts that because there was no evidence that any

sexual activity here was "against the will of the young victim," there was insufficient

evidence to support his conviction for kidnapping.[68]

     The Magistrate Judge notes first that Ohio law is clear that persons under the age of

13 cannot legally consent to sexual contact,[69] and the facts show that the victim here was only

7.[70]  However, neither the trial court in its charge to the jury nor the state appeals court in its

review of this claim by Roelle made the obvious statement that any sexual contact with this

victim by Roelle – as a result of the kidnapping or otherwise – would necessarily have been

"against her will" since she was too young to legally have given her consent to any such

contact.

---

[65] Ohio Rev. Code § 2905.01(A)(4).

[66] Ohio Rev. Code § 2907.02(A)(1)(b).

[67] ECF # 1 at 8.

[68] *Id.*

[69] *See*, Ohio Rev. Code § 2907. 05(A)(4) (prohibiting sexual "contact" with a person less than 13 years old); *see also*, Ohio Rev. Code § 2907.02 (A)(1)(b) (prohibiting sexual "conduct" with another less than 13 years old).

[70] *See*, ECF # 10 (trial transcript, vol. III) at 371.

Notwithstanding this oversight, the state appeals court considered Roelle's claim of

insufficient evidence under a standard articulated in two Ohio Supreme Court opinions,[71] one

of which explicitly relied upon and restated the holding of the United States Supreme Court

in *Jackson*.[72] This *Jackson* formula was itself restated by the Ohio appeals court in its

opinion.[73] Thus, the standard by which the state appellate court evaluated Roelle's claim was

the same clearly established federal law pronounced by the United States Supreme Court in

*Jackson*.

Employing the *Jackson* test, the Ohio appeals court did find that the evidence actually

adduced at trial was sufficient for a rational trier of fact to conclude beyond a reasonable

doubt that the sexual contact between Roelle and the "young victim" was against the will of

the victim:

> N [the victim] testified that the incidents occurred when she was "sleeping" in
> her bed. She stated that [Roelle] "carried" her to the living room where, with
> her in his lap, he put "lotion" on her "butt" and tried to "st[i]ck his wiener in
> [her] butt." N elaborated that her butt was used "to poop;" when asked if
> "anything" was "supposed to go inside of [her] butt?," she responded, "No."
> From this, a reasonable mind could conclude that the sexual activity took place
> without N's consent.[74]

Roelle does not here offer any basis for viewing these facts differently than the state

appeals court. Bearing in mind that a federal habeas court in these circumstances must start

---

[71] *State v. Dennis*, 79 Ohio St. 3d 421, 430, 683 N.E.2d 1096, 1105 (1997); *State v. Bridgeman*, 55 Ohio St. 2d 261, 381 N.E.2d 184 (1978).

[72] *See*, *Dennis*, 79 Ohio St. 3d at 430, 683 N.E.2d at 1105.

[73] *Roelle*, 2004 WL 1848181, at *3.

[74] *Id.*

with the facts as found by the state court and, then, view those facts and any inferences to be drawn from the facts in the light most favorable to the state, it is not unreasonable for the state court to have concluded that a rational juror could have found that any sexual contact between Roelle and the victim was, beyond a reasonable doubt, accomplished as part of the process of Roelle removing the victim from her bed for the purpose of engaging in sexual activity with her and done without her consent.

Thus, the Magistrate Judge recommends that Roelle's second ground for relief be denied as without merit since the state court decision on this claim was not an unreasonable application of clearly established federal law.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends denying this petition.


Dated:  June 29, 2007                                   s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[75]

---

[75] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).